FILED & ENTERED

APR 13 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>L.D.T. Investments Inc.<br><br><br><br>Debtor(s).<br><br>David Seror, Chapter 7 Trustee<br><br>Plaintiff(s),<br>v.<br><br><br>Myrna Farias, an individual, Jaime Farias, an individual<br><br><br><br>Defendant(s). | CHAPTER 7<br><br>Case No.:  1:11-bk-22664-MT<br>Adv No:   1:12-ap-01360-MT<br><br><br><br><br><br>**MEMORANDUM OF DECISION GRANTING IN PART, DENYING IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br><br><br>Date:        April 3, 2017<br>Time:       3:00 p.m.<br>Courtroom: 302 |

    Defendants Jaime Farias and Myrna Farias, a married couple (the "Defendants" or "Movants"), are individuals who, at all times relevant hereto, were residents of the State of California.  Debtor, L.D.T. Investments Inc. ("Debtor") was a legal entity incorporated in the State of California.  At all relevant times, Ms. Diana Lopez ("Lopez") was the chief financial officer of Debtor.  At all relevant times, Lopez was an agent for Debtor, with actual and apparent authority to act for Debtor, and had been so for a period of years.  Lopez also controlled Diversity Escrow, Inc. an escrow company that, on paper, was

owned and controlled by Lopez's father, David Jimenez, but was in fact controlled by Lopez. While it was operating, Debtor bought and sold real property, including the disputed transactions between Debtor and Defendants.

Debtor was a company that purportedly was in the business of purchasing distressed properties, improving the properties and then reselling the properties for a profit, conducting short sale negotiations and offering "cash for keys," with a principal place of business in Granada Hills, California, and operated by Lopez. Debtor and the Defendants engaged in a series of transactions over a two-year period between 2010 and 2011.

Prepetition, Debtor engaged in a series of transactions which was fraudulent and/or improper. Debtor was suspended by the California Secretary of State in or about March 2011. Notwithstanding the suspension by the California Secretary of State, Debtor continued to operate. Debtor continued operating until April 27, 2011 when Debtor closed its office location.

On or about August 25, 2011, the California Department of Real Estate filed an Order to Desist and Refrain against "LDT INVESTMENTS INC., doing business as LDT Escrow Division a Non Independent Escrow Division, and DIANA J. LOPEZ" (No. H-37475 LA) pursuant to California Business & Professions Code § 10086 (the "DRE Order"). LDT defaulted on September 13, 2011 and on September 16, 2011, the Department of Real Estate entered its decision in regard to Debtor ("DRE Decision"), revoking LDT's broker license.

**Procedural History**

On or about October 31, 2011 (the "Petition Date"), petitioning creditors Miguel Ortega, Martha Gomez, and Richard Pena filed an involuntary petition under Title 11, Chapter 7 of the United States Code against Debtor. The Court entered the Order for Relief on the involuntary petition against Debtor on December 8, 2011. David Seror was appointed as the chapter 7 trustee in the LDT bankruptcy (the "Trustee").

On October 4, 2012, Trustee filed an adversary complaint against Defendants. Between November 2012 and October 2013, Trustee and Defendants stipulated seven (7) times to extend the

time to respond to the Complaint. Ad. doc. 5; 8; 11; 15; 19; 23; and 27. On November 15, 2013, Defendants filed an answer to the Complaint. Ad. doc. 31.

On December 3, 2013, Defendants made their first change of counsel, substituting in Richard Moneymaker. Ad. doc. 32. During the tenure of Moneymaker, the parties stipulated to another continuance to engage in what proved to be an unsuccessful mediation. Ad. doc. no 37 and 40, respectively.

On August 27, 2014, Trustee filed a Motion for Leave to File Amended Complaint ("FAC Motion"), arguing that during the informal discovery process, he had obtained evidence that would support a claim for recovery of usurious interest against Defendants, in the event settlement failed. <u>Motion for Leave to File Amended Complaint</u>, ad. doc. 44. Defendants, via their then-counsel Moneymaker, opposed the FAC Motion.

On September 24, 2014, the Court entered an Order Granting the FAC Motion. Ad. ECF doc. 51. On September 25, 2014, Trustee filed the Amended Complaint (the "FAC") , asserting causes of action for avoidance, recovery of usurious interest, and recovery of fraudulent transfers under Title 11 and California law. Ad. doc. 52. On October 2, 2014, Defendants, via the same counsel Moneymaker, filed their answer to the FAC (the "Answer").

On June 10, 2015, Defendants made their second change of counsel, substituting in Michael Jay Berger for Moneymaker. Ad. doc. 75. Thereafter, between June 2015 and July 2016, the parties again stipulated to continue the pretrial conference, six times. Ad. doc. 76; 80; 85; 90; 93; and 98.

On July 22, 2016, the parties engaged in another unsuccessful mediation. <u>See</u> ad. doc. 104, ¶ C. On October 24, 2016, Defendants again changed counsel, substituting in Brian Rothschild for Michael Jay Berger. Ad. doc. 103. On October 25, 2016, the parties once again stipulated to continue the pretrial conference. Ad. doc. 104. The pretrial conference was continued to February 1, 2017.

On January 25, 2017, Defendants filed this Motion for Summary Judgment on Plaintiff's Claims 3, 4, and 5, and Certain Defenses to All Claims (the "MSJ"). Trustee opposes the MSJ. The hearing on the MSJ is set for March 22, 2017.

**Standard**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c) (incorporated by FRBP 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324. The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981).

**Discussion**

*Defendants Have Waived the Affirmative Defenses of (1) Broker Exception; and (2) Statute of Limitations, by failing to Properly Assert Said Defenses in their Answer to the FAC*

Federal Rule of Civil Procedure 8(c) provides, "In responsive to a pleading, a party must affirmatively state any avoidance or affirmative defense, including" among others, illegality and statute of limitations. Fed. R. Civ. P. 8(c). If an affirmative defense is not asserted in an answer to complaint, such defense is either waived or forfeited by a defendant. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133 (2008); Arizona v. California, 530 U.S. 392, 410 (2000); In re Adbox, Inc., 488 F3d 836, 841-842 (9th Cir. 2007). Although the terms are often used interchangeably, a "waived" defense is one that a "party has knowingly and intelligently relinquished" whereas a "forfeited" defense is one that "a party has merely failed to preserve." Wood v. Milyard, 566 U.S. 463, 132 S. Ct. 1826,1836 n. 4 (2012).

Courts have found that where an affirmative defense is raised for the first time at the summary judgment stage, failure to plead such defenses in the answer will result in waiver or forfeiture, unless the delay does not prejudice the opposing party. See Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993) (defendant failed to raise affirmative defense of qualified immunity in answer in a 28 U.S.C. § 1983 action and attempted to raise it for the first time on summary judgment; however, party opposing summary judgment did not claim any prejudice by the delay in asserting the defense, thus court held defense not waived); LSREF2 Baron, LLC v. Tauch, 751 F.3d 394, 402 (5th Cir. 2014) (unpled affirmative defense disallowed on summary judgment because delay prejudiced opponent's ability to respond).

There is no controlling law in the Ninth Circuit addressing the issue of what pleading standard is employed when determining the sufficiency of the pleading of an affirmative defense. Trustee cites to Wyshak v. City National Bank to support his contention that the standard for pleading affirmative defense is whether it gives the plaintiff "fair notice" of the defense. Wyshak v. City National Bank, 607 F.2d 824, 827 (9th Cir. 1979). The Wyshak decision, however, was decided before the Supreme Court changed the pleading standard in complaints from "fair notice" to "plausibility" in the Iqbal and Twombly cases. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The District Court for the Central District of California noted that "[n]either the Supreme Court nor the Ninth Circuit has expressly held that the plausibility requirement applies to affirmative defenses, and the issue has divided the district courts of this Circuit." Vogel v. Huntington Oaks Delaware Partners, LLC, 291 F.R.D. 438, 440 (C.D. Cal. 2013). The Vogel court held that the plausibility standard applies to affirmative defenses. Id. at 441.

Courts in the Northern District of California have reasoned that the Ninth Circuit's fair notice standard for affirmative defenses was based on the fair notice pleading standard for a complaint set forth in Conley v. Gibson, 355 U.S. 41, 47-48 (1957). As Conley's pleading standard was redefined by Iqbal and Twombly, the District Court for the Northern District of California held that the standard of pleading affirmative defenses was redefined. ABC Distributing, Inc. v. Living Essentials, LLC, 2016 WL 8114206 (N.D.Cal., April 26, 2016).

In the Southern District of California, however, the District Court chose to use the "fair notice" standard because the Ninth Circuit had continued to recognize the "fair notice" standard of affirmative defense pleading even after Twombly and Iqbal were decided.  Kohler v. Staples the Office Superstore, 291 F.R.D. 464, 468 (S.D.Cal. 2013) (citing Simmons v. Navajo County Ariz., 609 F.3d 1011, 1023 (9th Cir. 2010); Schutte & Koerting, 298 Fed.Appx. 613, 615 (9th Cir. 2008)).

While the standard is unsettled law in the Ninth Circuit, the Court need not decide this issue.  A review of the Answer shows that even under the less stringent standard of "fair notice," the Answer could not have given Trustee notice that Defendants intended to assert that Trustee's usury claim would be barred by the "broker exception" to the usury law, and the statute of limitations.  See ad. doc. 55. These defenses were required to have been asserted as affirmative defenses in the Answer and were not.  Movants argue in reply that these defenses were pled in the Answer, and point to the following paragraphs to support their contention:

> FOURTH AFFIRMATIVE DEFENSE
>
> Any transfers of the Debtor's property to the Defendants have been returned or paid back to the Debtor, voluntarily or involuntarily, and Plaintiffs claims are therefore barred by payment, setoff and/or recoupment.
>
> FIFTH AFFIRMATIVE DEFENSE
>
> The relief requested in the Complaint should be denied in whole or part because any recovery by Plaintiff would be unjust and inequitable under the circumstances of the case.
>
> SIXTH AFFIRMATIVE DEFENSE
>
> Plaintiff's complaint alleges what is tantamount to a Ponzi scheme. Defendant was deceived into putting more into the scheme than was received out of the scheme and therefore any receipts are not recoverable.

Answer, 2:21-3:8, ad. ECF doc. 55.

Rule 8 generally requires that "any matter not in issue under a simple denial of allegations in the complaint is an 'affirmative defense' and must be *specifically* pleaded as such in the answer." O'Connell & Stevenson, *California Practice Guide: Federal Civil Procedure Before Trial, California & Ninth Circuit Edition* 8:1005 (2017 ed.)(citing Saks v. Franklin Covey Co., 316 F.3d 337, 350 (2d Cir. 2003) (affirmative defense is an assertion raising new facts and arguments that, if true, will defeat plaintiffs claim even if allegations in complaint are true) (italics added). These general averments that recovery would be "unjust," that receipts are not recoverable because they were "deceived" is not sufficient under either the "fair notice" or the more rigorous "plausibility" standard to preserve every single equitable defense that would have been available to Defendants under the circumstances they allege occurred between themselves and Debtor.

Given the substantial delays and lack of disclosure in this case, permitting Defendants to assert these affirmative defenses at this late stage would cause severe prejudice to Trustee and to the timely administration of an estate that has been open for over 5 years. The Court and Trustee were accommodating to Defendants' regular changes in counsel and have given Defendants every opportunity to amend their answer or bring dispositive motions. This adversary case has been pending for over four years and discovery has been closed for two years. Defendants never served initial disclosures in this case, and never specifically plead these defenses so Trustee's assertion that he never had clear notice to take discovery on these issues is correct.

Defendants' position is especially unreasonable where they were represented by experienced counsel at the first mediation in which Trustee was allegedly given constructive knowledge of the defense(s), and the Answer was drafted by the same experienced counsel who should have known these defenses needed to be specifically preserved. Defendants' position that Trustee should have read between the lines of their general, broadly-drafted answer and anticipated on what defenses they would eventually rest is untenable. Trustee cannot be expected to take discovery on any possible defense raised in a confidential setting, whether or not properly pled. That would increase costs and increase the discovery burden for all parties without good reason.

Whatever reason Defendants had for substituting in other counsel after the Answer was filed, Trustee has diligently pursued these claims and Defendants are bound by conduct of prior counsel.

These defenses have been waived. Whether Defendants' defense of *in pari delicto* was waived is discussed below.

*Defendants May Assert the In Pari Delicto Defense, which Bars Trustee from Recovering on his Usury Claim*

A bankruptcy trustee has the power to pursue, in general, two types of actions—actions brought pursuant to his avoiding powers and actions based on the debtor's pre-petition rights of action that become property of the estate upon the filing of the case. See In re Singh, 2015 WL 1887939, n.6 (Bankr. E.D. Cal. April 22, 2015)(citing Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 356 (3rd Cir. 2001)). As to the latter, the trustee steps into the shoes of the debtor, taking such rights of action subject to any defenses a defendant would have had against the debtor, including *in pari delicto*. Id. See also In re Bonham Recovery Actions, 229 B.R. 438, 442 (Bankr. D. Alaska 1999) ( [a] bankruptcy trustee has long been able to assert a right to a usury claim which belonged to a debtor. The trustee, however, takes the property of the estate under 11 USC § 541(a) subject to any encumbrances or blemishes that existed against the debtor.... In the bankruptcy vernacular, the trustee stands in the shoes of the debtor).

In this instance, Trustee's usury claim is one where the basis is Debtor's prepetition right that became property of the estate once the order for relief was entered. Bankr. ECF doc. 11. Thus, Trustee stands in the shoes of Debtor and is subject to any defenses Defendants would have had against Debtor, including *in pari delicto*. In asserting *in pari delicto*, Defendants must show that Debtor participated in "illegal, fraudulent, or inequitable conduct." Casey v. U.S. Bank, N.A., 127 Cal. App. 4th 1138, 1155, n.1 (Cal. Ct. App. 2005). Trustee's argues that Defendants must establish that such fraudulent conduct should be implicated to Trustee, but cites no authority for that proposition.

Trustee properly stated that *in pari delicto* is not a defense to Trustee's claims under §§ 548 or 544. See In re Fuzion Technologies Group, Inc., 332 B.R. 225, 232 (Bankr. S.D. Fla 2005). Trustee's only argument in response to the usury claim is that Defendants waived the defense of *in pari delicto* when they failed to specifically plead it in the Answer.

As stated above, where an affirmative defense is raised for the first time at the summary judgment stage, failure to plead such defenses in the answer will result in waiver or forfeiture, unless

-8-

the delay does not prejudice the opposing party. Camarillo v. McCarthy, 998 F.2d at 639 (9th Cir. 1993). Unlike the waived defenses discussed above, Defendants' *in pari delicto* defense to Trustee's usury claims was preserved in the Answer, albeit inartfully, and permitting Defendants to assert the defense is not prejudicial to Trustee.

Defendants argue that Trustee was not prejudiced by their late assertion of *in pari delicto*, and refer to Trustee having knowledge of Defendants' defenses to the usury claim because they were "asserted at both mediations long before the close of discovery" and Trustee "had every opportunity to conduct discovery on this issue…." Reply to Trustee's Opposition to MSJ, ad. doc. 140, 14:6-9.  In the FAC, Trustee specifically pled a cause of action for recovery of usurious interest.  The Answer, filed by Defendants after the first mediation, did not specifically plead *in pari delicto*, but did state that Trustee was alleging an arrangement that was "tantamount to a Ponzi scheme" and that "recovery by Plaintiff would be unjust and inequitable under the circumstances of the case." Answer, 3:2-9.

The Complaint and the undisputed facts in Debtor's chapter 7 case describe in detail the allegedly illegal conduct of Debtor and its principal.  See Seror v. Lopez (In re Lopez), 12-01097, doc. 103 (the "Lopez Adversary").  Given the findings made against Debtor and its principal in the Lopez Adversary, Trustee is standing in the shoes of a debtor that was found to have been engaged in fraudulent and deceitful conduct through its principal Diana Lopez. See id., p. 19 ([w]ith respect to the LDT bankruptcy, [Lopez's] discharge is denied under §727(a)(3), (a)(4)(D) and (a)(5) as applied through §727(a)(7)).

The California Court of Appeal has applied the doctrine of *in pari delicto* to bar recovery by a bankruptcy trustee in a Ponzi scheme case. In Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, 133 Cal.App. 4th 658, 679–82 (2005), the court held that the bankruptcy trustee of an entity, Peregrine, used by its owner to perpetrate a Ponzi scheme was barred by the doctrine of unclean hands from suing the debtor's and its owner's attorneys for negligence and misconduct that allegedly aided in delaying discovery of the scheme. The Peregrine court expressly equated "unclean hands" to the doctrine of *in pari delicto*. Peregrine, 133 Cal.App.4th at 677.

Trustee has not been prejudiced by Defendant's late specification of the *in pari delicto* defense. As Defendant correctly points out, *in pari delicto* is purely a matter of a plaintiff's bad conduct: a

defendant's bad conduct is irrelevant. See In re Singh, No. 10-42050-D-7, at *5-6 (Bankr. E.D. Cal., Apr. 22, 2015). Trustee himself proved many of Debtor's bad acts in other adversary proceedings and had findings of fact that Debtor engaged in fraudulent conduct. See *e.g.*, Seror v. B&G Financial, Inc., 1:13-ap-01309-MT, *Findings of Fact and Conclusions of Law*, ECF doc. 61, Jan. 3, 2017. Debtor's fraudulent conduct was stipulated to in the Joint Pretrial Stipulation. Ad. ECF doc. 166, p. 2-6. Given the extent of Debtor's fraudulent conduct, it was entirely plausible that Defendants would assert the *in pari delicto* defense to Trustee's usury claim. This is especially true where, in the Answer, Defendants stated that any recovery on Trustee's claim would be "unjust and inequitable under the circumstances of the case." Answer, 3:2-4, ad. ECF doc. 55.

For the reasons stated, the court concludes that Defendants have made a prima facie showing that the defense of *in pari delicto* applies, and Trustee has failed to show there is a genuine issue of material fact that should preclude summary adjudication of the issue. Accordingly, the Court will grant summary judgment in favor of Defendants and against Trustee on the usury claim.

*Genuine Issues of Material Facts Exist as to Whether Defendants Gave "Reasonably Equivalent Value"*

Defendants have submitted a large quantity of unauthenticated documents and a late declaration of Defendants which does not properly authenticate all documents. Trustee objects to consideration of such on evidentiary as well substantive grounds. While unauthenticated documents may be considered on a motion for summary judgment where the documents would be admissible at trial, there is no need to rule on the evidentiary objections as to each item at this time because, even if they are considered, there are material disputed facts as to essential elements that must be resolved at a trial where inferences can be drawn.

Movants argue that they are entitled to judgment as a matter of law because a review of the transactions between Defendants and Debtor shows that Defendants loaned or paid cash in exchange for debt obligations. Defendants argue that each loan obligation constituted a valid and enforceable antecedent debt against Debtor. Defendants maintain that the satisfaction of each of Debtor's debts is *per se* reasonably equivalent value, and there is no evidence that Defendants knew or should have known that Debtor was involved in a fraudulent scheme.

-10-

While that may indeed be one interpretation of the evidence, Trustee has submitted another version of the evidence which, when all reasonable inferences are made in his favor, allow the court to draw a different conclusion. Trustee contends that the report by his accountant (the "Report"), which includes a breakdown of the time between each transfer of money from Defendants to Debtor, Debtor's return of the money "lent," and the amount of interest that accrued in between, casts doubt on whether Defendants paid "reasonably equivalent value."  Defendants urge "legal conclusions" which cannot be made on such a detailed factual inquiry. The Deposition testimony and the Report submitted by Trustee raise a genuine issue of material fact that is clearly in dispute.  While Defendants raise certain factual issues which must be seriously considered at trial, any conclusion as to "reasonably equivalent value" must, on a motion for summary judgment, resolve all material inferences in favor of the nonmoving party, Trustee. Whether Defendants were "net losers" in Debtor's scheme or involved in the scheme determines, in part, which line of cases controls.

Defendants also note in their Reply that the issue of Debtor's insolvency was stipulated to by the parties.  While that is true, the issue of Defendants knowledge of Debtor's financial situation, however, was not.  "[K]nowledge of the transferor's insolvency *may*, in conjunction with other factors, prevent the transferee from asserting good faith."  5-548 Collier on Bankruptcy P 548.09 (16th ed.)(italics added). Trustee points to Defendant Myrna's deposition testimony about her close ties to Lopez and Defendant Jaime's deposition testimony about his understanding of Debtor's business and his role in it to show that there is a material question of fact as to whether Defendants were "innocent investors."  Trustee's Opposition to MSJ, 9:11-13-6.

"[O]ne who knowingly or recklessly participates in a fraudulent scheme designed to injure or obstruct the transferor's creditors will not be protected even though value may be given in exchange for the transfer." In re Maddalena, 176 B.R. 551, 555 (Bankr. C.D. Cal. 1995)(citing In re Agricultural Research and Technology Group, Inc., 916 F.2d 528, 535 (9th Cir. 1990) (courts look to what the transferee objectively knew or should have known in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint)).  Such fact-based inquiries require testimonial evidence from Defendants to explain the issues raised by the Report and their deposition testimony, and the opportunity for Trustee to cross-examine each Defendant.  On this record, the Court cannot find as a matter of law or undisputed material fact that Defendants gave reasonably equivalent value. The nature of the relationship between Debtor and Defendants is a critical inquiry that requires

inferences that cannot be made in this motion. At this stage, all reasonable inferences are to be made in favor of the non- moving party, and summary adjudication is inappropriate on the fraudulent transfer and recovery claims.

Motion GRANTED, in part, as to the Seventh Claim for Relief for Usury under California law; and

Motion DENIED, in part, as to First through Sixth Claims for Relief under 11 U.S.C. §§ 544, 548, and 550 and California Civil Code §§ 3439.04(a)(1) and (a)(2), 3439.05, and 3439.07.

###

Date: April 13, 2017

Maureen A. Tighe
United States Bankruptcy Judge